(No. 36801.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RAYMOND BAGATO, Plaintiff in Error.

*Opinion filed February 1, 1963.—Rehearing denied March 27, 1963.*

EDWIN H. CONGER, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and RUDOLPH L. JANEGA and DEAN H. BILTON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Defendant, Raymond Bagato, was convicted of the crime of unlawful sale and possession of narcotics by the

criminal court of Cook County in a trial without a jury. He was sentenced to the Illinois State penitentiary for a term of a minimum of 10 years and a maximum of 12 years. On this writ of error to review that judgment, defendant contends that his motion for discharge should have been allowed, since he was not tried within four months of incarceration, and the delay was not attributable to him.

From the record it appears that defendant was arrested on April 21, 1960, on a charge of conspiring to violate the Uniform Narcotic Drug Act. On April 23 his preliminary hearing in the municipal court was continued "by the court" until April 26. On that date it was continued until June 2, "on motion of defendant."

Inasmuch as the basis of defendant's claim is that this continuance should not be attributed to him, a close examination of the surrounding circumstances is warranted. The report of the proceedings of April 26 indicates that defendant appeared *pro se* and personally asked the court for a continuance until May 31, in order to get ready for trial; that by agreement of the court and the defendant, trial was set for June 2; and that a police officer stated that the date was all right if it was agreeable to the court.

Defendant, however, testified on his motion for discharge that he made the request at the direction of the arresting officer, in order "to get time to help himself." The evidence shows that after defendant's arrest the police officer told him that they weren't really interested in him, but in someone higher, and that he (the officer) would inform the State's Attorney if defendant co-operated in the apprehension of narcotics peddlers. The arresting officer made no promises to recommend leniency, nor any threats, and defendant admitted that he understood that if he was willing to co-operate there would be some consideration, but "nothing definitely stated as to what it would be."

Although defendant initially refused to divulge the names of persons he was obtaining the drugs from, the fol-

lowing day he told the police officer that he had thought it over, and "agreed to go through with it," and "identify certain people responsible." Defendant next saw the officer on April 26. When asked if he still intended to co-operate, defendant said that he was willing. He was told to ask for a continuance until May 31, and that he would be transferred from the county jail to the State's Attorney's witness quarters, so that he could co-operate. In explaining why he asked the court for the continuance, defendant stated, "You might say that I was looking for a way to get off the hook on that charge."

After the court proceeding on April 26, in which the case was continued until June 2, defendant was transferred to the witness quarters. He was not free to leave there at will, but was taken out on some three or five occasions, accompanied by the arresting officer, to see persons suggested by him pursuant to the agreed plan of identifying narcotics peddlers. It is undisputed that he never testified against any of these persons, and after several trips the police apparently became convinced that he was co-operating only with the narcotics peddlers. According to defendant's testimony, "the people had thought that I had somehow informed the people that an arrest was about to be made." Consequently, on May 20, 1960, defendant was transferred back to the county jail.

On July 29, 1960, defendant was indicted for the illegal sale and possession of narcotics. At his arraignment on August 15, he was assigned counsel "from the Bar Association" at his request. A plea of not guilty was entered on four indictments, and defendant was given a list of witnesses present when he made four separate oral confessions. The case was then set for trial on September 13. At that time defendant's counsel moved to discharge defendant on the ground that it was more than four months since his arrest on April 21, 1960. The court denied his motion on September 19, after a hearing in which testimony was pre-

sented by defendant, his mother, the arresting officer, the officer in charge of the records in the witness quarters, and the court reporter who transcribed the proceedings on April 26. Defendant waived his right to a jury trial, and on September 20, at a further hearing, the court found defendant, age 24, guilty of unlawful sale of narcotic drugs as charged in the indictment. Judgment was pronounced and defendant was sentenced to the term previously noted.

On this writ of error there is no issue relating to defendant's guilt of the crime for which he was convicted. The sole question is whether he is entitled to be discharged under the "Four Months Statute" in the Criminal Code as it is commonly known. Ill. Rev. Stat. 1959, chap. 38, par. 748.

That section provides in substance that any person committed for a criminal offense and neither admitted to bail nor tried within four months from the date of incarceration shall be discharged upon petition, unless the delay is occasioned by the prisoner, or unless an extension of not more than 60 days has been granted to the State to procure additional evidence.

As construed by the courts, the right to discharge is not absolute in the sense that mere lapse of time ousts the court of jurisdiction. (*People* v. *Morris,* 3 Ill.2d 437.) Where a defendant himself has sought and obtained a continuance, or by his own actions caused the delay, the right to be tried within the four-months period of incarceration is suspended. Under those circumstances, the four-months period is computed from the date to which the case was continued. (*People* v. *Rankins,* 18 Ill.2d 260, 262; *People* v. *Niemoth,* 409 Ill. 111, 116; *People* v. *Hartman,* 408 Ill. 133.) At the same time the courts have been vigilant of the rights conferred by that statute, and have protected them from being nullified by technical evasions. Thus, even where the record recited that the motion for continuance was made by defendant, the statute would not be tolled where the actual report of proceedings indicated that defendant had not in

fact caused or contributed to the delay. *People* v. *House,* 10 Ill.2d 556, 558; *People* v. *Wyatt,* 24 Ill.2d 151, 154.

In the instant case the report of the proceedings indicates not only that the hearing was continued from April 26 to June 2 "on defendant's motion," but that he personally asked the court for the continuance in order to prepare for trial. Moreover, even according to his testimony, while the continuance was at the suggestion of the police officer, defendant made the request, not for the benefit of the State's case against him, but to get himself "off the hook" on the pending narcotics charge. He had been told that his co-operation as a witness in the apprehension of narcotics peddlers would be reported to the State's Attorney. To gain that potential advantage required time, and defendant deliberately asked the court for that time. Under these circumstances it can hardly be denied that defendant "caused or contributed" to the delay.

In support of his right to discharge, however, defendant relies upon the case of *People* v. *House,* 10 Ill.2d 556. In the *House* case the defendant was arrested on June 15, 1955, and confined continuously for almost six months, until December 1, 1955. Although four of the five continuances were at the instance of the court, and two were even after the four month period had expired, the first continuance was reported to be "on defendant's motion." Examination of the court proceedings, however, indicated that the continuance was actually at the suggestion of the court in order to notify defendant's counsel. In holding that the responsibility for that continuance could not be ascribed to defendant, the court stated at p. 559: "The constitutional guarantee of a speedy trial would be a mockery, indeed, if this court were to permit the State's Attorney and trial court, either with intent or through inadvertence, to ascribe to the defendant, when appearing for arraignment and without counsel, a motion for continuance which he did not make, and thereby toll the running of this statute."

In contrast, in this case it would be a "mockery" of the judicial process to permit defendant, who did in fact request the five-week continuance for his own benefit, to now ascribe that delay to the State's Attorney. Consequently, we cannot perceive how our decision in the *House* case supports defendant's contention on this appeal.

Nor is *People* v. *Wyatt*, 24 Ill.2d 151, cited by defendant, authority for his discharge. There the proceedings showed that the court at defendant's arraignment ordered the continuance at the request of a bystander in the course of a discussion about defendant securing counsel. Since the record showed that it was the court, and the court alone, which proposed and interjected the matter of a continuance, we held that defendant's acquiescence could not convert the court's offer into a request on motion of defendant.

Nor can analogy be made to *People* v. *Shaw*, 24 Ill.2d 219, cited by defendant. The court there merely held that defendant's request for a psychiatric examination, without any request on his part for a continuance, neither caused nor contributed to the delay in bringing him to trial.

We find no value in prolonging this opinion by reviewing the infinite variations of facts in the cases involving motion for discharge under the "Four Months Statute." (*People* v. *Perry*, 23 Ill.2d 147; *People* v. *Rankins*, 18 Ill.2d 260; *People* v. *Morris*, 3 Ill.2d 437; *People* v. *Iasello*, 410 Ill. 252.) The criterion in each case is whether defendant's acts caused or contributed to the delay. In this case, where the delay was a necessary part of a plan in which defendant was an active participant, and whereby he would gain an advantage in his own case, there can be no question that the delay may properly be attributed to him. Under this analysis, defendant was tried within four months of June 2, 1960, the date to which the hearing was continued, and the trial court properly held that defendant was not entitled to a discharge under the four-months statute.

*Judgment affirmed.*